UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY J. KALBACH,

    Plaintiff,

v.                                                        Case No. 1:11-cv-382
                                                          Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                        /

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

    **I.**    **Background**

    **A.**    **Plaintiff's disability claim**

       Plaintiff was born on November 21, 1962 (AR 58).[1] Plaintiff alleged a disability onset date of October 1, 2001 (AR 58). She completed four years of college with a degree in accounting (AR 88, 493). Plaintiff had previous employment as an accountant, accounting clerk, secretary, dispatcher and house cleaner (AR 93-100). Plaintiff identified her disabling conditions as blood clots, diabetic thyroid problems and back ailments (AR 83). Due to these conditions, plaintiff was unable to stand, sit or walk for long periods of time, has constant pain in the legs, neck and back and is overweight (AR 83).

---

[1] Citations to the administrative record will be referenced as (AR "page #").

### B. The September 13, 2005 decision denying benefits

The ALJ reviewed plaintiff's claim *de novo* at a hearing held on April 12, 2005 (AR 488-524) and entered a written decision denying benefits on September 13, 2005 (AR 14-23). Plaintiff appealed the decision to the federal court, resulting in a reversal and remand pursuant to sentence four of 42 U.S.C. § 405(g) for the purpose of re-evaluating opinion evidence regarding (1) plaintiff's need to elevate her legs and (2) the extent that plaintiff needed to avoid prolonged standing or walking. *See Kalbach v. Commissioner of Social Security*, No. 1:06-cv-284 (W.D. Mich.) ("*Kalbach* I") (Report and Recommendation, April 3, 2007) (Order and Judgment Approving Report and Recommendation, May 17, 2007).

### C. The March 5, 2008 decision denying benefits

On remand, an ALJ held a second hearing on November 21, 2007 (AR 701-42) and entered a written decision denying benefits on March 5, 2008 (AR 540-50). Plaintiff again appealed to the federal court, resulting in a joint stipulation for remand pursuant to sentence four of 42 U.S.C. § 405(g) to "consider Dr. Sitek's opinion and give further consideration to Plaintiff's need to elevate her lower extremity." *Kalbach v. Commissioner of Social Security*, No. 1:08-cv-1061 (W.D. Mich.) ("*Kalbach II*")(Joint Stipulation for remand, March 24, 2009) (Order approving stipulation, March 25, 2009).

### D. The April 3, 2010 decision denying benefits

On second remand, the ALJ held a third hearing on January 27, 2010 (AR 898-939) and entered a written decision denying benefits on April 3, 2010 (AR 755-64). The Appeals Council declined to assume jurisdiction (AR 744). Accordingly, the ALJ's April 3, 2010 decision has become the final decision of the Commissioner and is now before the Court for review.

## II. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

### III.  ALJ'S APRIL 3, 2010 DECISION DENYING BENEFITS

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 1, 2001 through the last insured date of December 31, 2006 (AR 757). Second, the ALJ found that

through the date last insured, plaintiff had the following severe impairments: morbid obesity (May 2006 height- 64 inches, weight - 270 pounds); right shoulder type III acromion impingement; right trochanteric bursitis; and degenerative disc disease of the cervical spine with disc protrusions and nerve root irritation (AR 758). The ALJ also found that through the date last insured, plaintiff had the following non-severe impairments: deep vein thrombosis (DVT) with mild chronic venous stasis; diabetes mellitus; and minimal carpal tunnel syndrome (AR 758). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 758). In this regard, the ALJ reviewed Listings 1.02 (major joint dysfunction), 1.04 (disorders of the spine), 11.04 (central nervous system vascular accident), and 11.08 (spinal cord nerve root lesions) (AR 758).

The ALJ decided at the fourth step that through her date last insured, plaintiff had the residual functional capacity (RFC) to perform a range of sedentary work as defined in 20 C.F.R. § 404.1567(a) as follows:

> Clamant was able to lift and carry a maximum of ten pounds. During an eight-hour workday with normal breaks, she was able to stand or walk for two hours (cumulatively), and she required a discretionary sit/stand option at will. She was able to climb stairs and ramps frequently, but she could not climb ladders, ropes or scaffolds. She was able to balance, stoop, kneel, crouch or crawl occasionally. Claimant was unable to work at hazards, such as working at unprotected heights or involving the operation of dangerous machinery with moving parts.

(AR 759). At the fourth step, the ALJ found that through the date last insured, plaintiff was capable of performing her past relevant work as an accounting clerk, work which "did not require performance of work-related activities precluded by the claimant's residual functional capacity" (AR 763). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in

the Social Security Act, from October 1, 2001 (the alleged onset date) through December 31, 2006 (the date last insured) (AR 764).

### IV. ANALYSIS

Plaintiff has raised one issue on appeal.

**The ALJ failed to give appropriate weight to the opinions of Nurse Practitioner (NP) Gabrielle Cochran-Walters (Walters)**[2]

#### A. Plaintiff's claims of impairment

Plaintiff testified at a hearing held on January 27, 2010 (AR 898-939).[3] Plaintiff had consistent pain and swelling with her legs which has worsened over time (AR 903). She had some improvement with the use of compression stockings, rest and elevation of her legs every half-hour (AR 904). Plaintiff later estimated that on a typical day, she will elevate her legs five or six times for about 15 minutes each time (AR 914-15). Plaintiff stated that walking, sitting and standing in one spot aggravates the swelling and that she can stand in one place for only five to ten minutes (AR 905-06). Plaintiff is a diabetic and at the time of the hearing had almost daily spikes in her blood sugar (AR 907). Due to her carpal tunnel syndrome, she has problems picking up things and often drops things (AR 908). Plaintiff can lift up to ten pounds but cannot lift over shoulder height (AR 909). Plaintiff also has shoulder problems, neck pain and excruciating pain in her right hip (AR 910-11). Plaintiff placed her current weight as 270 pounds (AR 921). Plaintiff's doctor discussed bariatric surgery as a means to lower her weight, but plaintiff has refused the surgery because it is

---

[2] The court notes that NP Walters is sometimes referred to as Gabrielle Walters, Gabrielle Cochran and Gabrielle Cochran-Walters.

[3] Plaintiff's most recent hearing occurred more three years after her last insured date. The court notes that while the testimony reflected plaintiff's current medical condition, plaintiff linked little of the testimony to her medical condition during the relevant time period (October 1, 2001 through December 31, 2006).

in her opinion "just a band-aid" (AR 924). Plaintiff stated that in a typical day, she will get in the tub for at least an hour, get a bite to eat, lay down for about one-half hour, maybe go shopping (pushing a grocery cart or stroller), watch television and "mess with the computer" (AR 912-13). Plaintiff cannot take care of basic household chores but she can drive and go grocery shopping (AR 913-14). Plaintiff also cared for four foster children who were at that time aged 11, 14, 16 and 17 (AR 913).

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent those statements were inconsistent with the RFC determination (AR 760). The ALJ found that plaintiff's claim was not credible, in part, because she was able to raise eleven children (including five adopted children and four foster children) during the relevant time period and because she failed to comply with treatment recommendations (AR 760-61). The ALJ's evaluation of plaintiff's credibility, which is relevant to her claim presently before the court, is set forth below in its entirety:

> Claimant's alleged functional problems, including the contention of inability to engage in substantial gainful activity, are not reasonably supported by the record as a whole. During the pertinent period, claimant maintained an active lifestyle raising her seven children (including five adopted children) (Exhibit 2F/4). Additionally, the claimant testified that she cared for at least four foster children for which she was paid foster care payments by the State of Michigan (as much as $600 per week by her own estimate). Claimant also traveled to Florida for several months at a time (Exhibit 17F/4).
>
> During the hour long hearing, the claimant appeared to be seated comfortably and was not observed to elevate either leg or request the opportunity to do so.
>
> Claimant's earnings record reflects rather marginal earnings with several years of no earning predating the alleged onset date in October 2001.

7

>       The undersigned also notes claimant's multiple instances of non-compliance with treatment recommendations including those of Nurse Practitioner Cochran-Walters, who authored several letters imploring the claimant to change her unhealthy diet and poor exercise habits. In May 2006, the nurse practitioner agreed with the claimant's subjective comment that she doubted she would live until age 55 (approximately ten years from then) if she did not make recommended dietary and exercise changes. Ms. Cochran-Walters characterized the claimant's remark as "flippant" (Exhibit 18F/13). In April 2004, Edward J. Brophy, DO, likewise advised a vigorous exercise program (Exhibit 4F).
>
>       Finally, the undersigned must also note a significant change in the claimant's otherwise pleasant demeanor at the hearing when the issue of her raising and caring for foster children was discussed. The undersigned sympathizes with the argument set forth by counsel at hearing that both disabled and non-disabled individuals can have children and care for them appropriately. However, the claimant has made it an endeavor if not a business to care for multiple foster children in addition to her own children and this activity (on an everyday basis over a prolonged period) certainly speaks to the claimant's overall ability to function in areas that have a common ground with those involved in the performance [of] basic work activities. The ability to function is [sic] a home or non-work community setting is not altogether different from functioning in a work setting. In the instant case, the medical and other evidence convinces me that the claimant was never disabled through the date insured. Even in the absence of the claimant's extensive childcare activity, however, the medical evidence would also lead me to the identical conclusion.

(AR 760-61).

### B.     NP Walters' restrictions

Plaintiff's claim is based upon an opinion given by NP Walters on November 9, 2004 (AR 444-48). Plaintiff's Brief at p. 3. In *Kalbach I*, the court summarized the substance of that opinion:

> [C]laimant was diagnosed with type II diabetes mellitus, hypertension, clinical severe obesity, severe dyslipidemia, chronic DVT, bilateral carpal tunnel syndrome, chronic neck pain, and possible fibromyalgia. The claimant has symptoms of persistent leg pain with standing, walking or any movement, right shoulder pain limiting her range of motion, and bilateral hand pain which limited her finger dexterity. The claimant was incapable of tolerating even a low stress job. The claimant can walk one-half to one block without having to rest or severe pain, sit for 30 minutes a time before having to get up, and stand for ten minutes before needing

8

> to sit down or walk around. She can stand and/or walk for a total of two hours in an eight-hour work day, and sit for a total of four hours in an eight-hour work day. She must be able to walk around every 30 minutes, lasting five minutes in an eight-hour work day. She must have a sit, stand, or walk option. She needs to elevate her leg 80 to 120 percent [sic] of the time during an eight-hour working day. She could occasionally lift and carry less than ten pounds in a competitive work situation. She can frequently look down, look up, and hold head in static position. She can occasionally turn her head from right to left. She can occasionally stoop. She can rarely twist, crouch/squat, and climb stairs. She must never climb ladders. Out of an eight-hour work day, the claimant can grasp, turn, twist objects, and perform fine manipulations 20 percent with the right hand and 30 percent with the left. She cannot reach overhead with her right hand and only 50 percent with the left. She will be absent from work more than four days per month because of her impairments producing a bad day (Exhibit 16F).

*Kalbach I*, Report and Recommendation at p. 5 (quoting ALJ's summary of the report at AR 21, 444-48). NP Walters further noted that plaintiff's impairments can be expected to last "Forever" (AR 444).

### C. The ALJ's review of NP Walters' opinions

In the April 3, 2010 decision under review, the ALJ engaged in a lengthy evaluation of NP Walters' treatment notes and opinions, including a sworn statement from December 8, 2009, in which NP Walters discussed her treatment of plaintiff (AR 873-84). Given that this is plaintiff's third appeal filed in this court, and that the central issue raised in this appeal involves the ALJ's review of NP Walters' opinions, the court will set forth those portions of the decision which relate to NP Walters.

> The undersigned considered the office notes and opinion statements of Family Nurse Practitioner Gabrielle (Cochran) Walters, FNP, including the December 2009 deposition statement in exhibit 27F. This source is an "other" source rather than an acceptable medical source (20 CFR 404.1513). In the deposition statement, Nurse Cochran opined that among a host of required physical and mental restrictions, every 30 minutes the claimant would need to sit down and elevate her legs above heart level for 10 to 15 minutes (Exhibit 27F/8).

> The undersigned must assign reduced weight to Nurse Cochran-Walters' opinion statements in view of the lack of supportability of such statements. The medical evidence does not support her conclusions that the claimant must take unscheduled breaks, that she must elevate her legs or that she must abide by any other work-preclusive limitation. It is noted that within several months after her hospitalization for right leg deep vein thrombosis in early 2003, an Ultrasound Doppler study concluded that claimant's right lower extremity DVT had resolved (Exhibit 9F/6). The clinical records of Nurse Cochran-Walters – reflecting 26 office visits from May 28, 2003 to October 10, 2006 – make little reference to the existence of any subsequent residual lower extremity problems until well after claimant's last insured status in December 2006. An emergency room visit on September 8, 2004 for right calf pain was equivocal for DVT and the fact that there is no reference to this visit or to any right leg symptoms in Nurse Cochran-Walters next office visit note of October 5, 2004 render it highly unlikely that such was a recurrent DVT (Exhibit 17F/7). That claimant was able to engage in normal, even active, lifestyle events shortly afterward is reflected in the office note of November 11, 2004 where claimant informed her nurse that she was leaving for Florida for 2 months and advised upon her returning that she tried to exercise daily and exhibited "minimal peripheral edema" on exam (Exhibit 17F/4-7). This is consistent with several other references in the physical examination portions of Nurse Cochran-Walters notes which record her observations that claimant's extremities were "symmetric without peripheral edema" (Exhibits 13F/27; 18F/6). Noteworthy also is the fact that the last such observation was made on January 10, 2007, less than 2 weeks after claimant's Title II [DIB] insured status expired.

(AR 761-62).

> In further discussion of the applicable weight to be assigned to the opinions of Nurse Cochran-Walters, there is a disturbing contradiction between the nurse's wide-ranging statement of limitations in support of her patient's claim for Social Security Disability benefits and those responding to the inquiries of the Child and Family Services division of the State of Michigan regarding the claimant's functional capabilities in activities related to child care. For example, in a statement to the State of Michigan asking for her expert opinion about claimant's fitness to provide adequately for children that may be placed under her care, Nurse Walters was strangely reserved and uninformative, mentioning absolutely nothing about the myriad of serious physical and psychological limitations she had published previously in support of claimant's Social Security Disability claim (Exhibit 16F and 29F/3). One is left to speculate as to why this licensed health care professional would in one forum be so nondescript in describing her patient's alleged limitations as they would impact the possible safety and welfare of children who were being considered for foster care placement in claimant's home yet be so precisely detailed and inclusive when it came time to list an exposition of restrictions for consideration

>   in claimant's efforts to obtain disability benefits, affirming many of the same opinions under oath [on December 8, 2009] (Exhibit 27F/4) [AR 873-84].

(AR 762).

The ALJ determined that there was little objective evidence to support plaintiff's leg elevation requirements:

>   Additionally, there is a notable absence of objective findings and other rationale to support the proposed leg elevation requirements. The family nurse practitioner does not explain how she devised the proposed limitations. Her office notes within several months after claimant's February 2003 DVT hospitalization are devoid of any findings of leg pain or swelling or other problems which could reasonably explain the need for elevation of the legs. There is no record of a physical capacities evaluation (or other objective testing) to explain or quantify the proposed limitations.
>
>   Nurse Cochran-Walter's [sic] characterization of chronic right leg deep vein thrombosis (DVT) is a misnomer. During the pertinent period from the alleged onset date through the date last insured, the claimant was treated for DVT only once (during the February 3, 2003 hospitalization). Dorland's Illustrated Medical Dictionary (30th edition) describes chronic as "persisting over a long period of time." An objective view of the medical evidence does not support a chronic or persistent DVT problem at any time after the February 2003 hospitalization through the date last insured. There was an initial occurrence in 1985 and then a recurrent DVT in February 2003. There was no evidence of subsequent DVT recurrence from April 2003 through the date last insured of December 31, 2006.
>
>   At best, the medical record evidence post May 2003 supports ongoing mild chronic venous stasis, which was the diagnosis of Dr. Potthoff, a peripheral vascular surgeon. He prescribed Coumadin and the use of support stockings to treat this malady but offered no other restrictions or recommendations and notably expressed no opinion about elevating the legs (Exhibit 3F/2). As of that point, Dr. Potthoff was the physician responsible for managing claimant's DVT care. After May 2003, claimant was not treated by Dr. Potthoff or any other vascular surgeon again for DVT until at least February 2009 (Exhibit 29F/4-5).
>
>   By September 2004, Nurse Cochran-Walters offered an optimistic picture of claimant's health status, reporting that the right shoulder had improved significant [sic] following an injection, that she (the claimant) wanted to hold off on surgery for minimal carpal tunnel syndrome, and that she was not having the same level of discomfort of the legs and feet with the use of well-supported hiking boots (Exhibit 17F/9).

> The undersigned does take note of the advice from the hospital discharge physician Dr. Sitek in February 2003 that the claimant should elevate her right lower extremity "whenever possible" (Exhibit 2F/4). This recommendation was offered in the context of the physician's other hospital discharge instructions including that the claimant follow-up with her primary care physician within 10-14 days. Moreover, there are no records of any subsequent treatment contacts with Dr. Sitek. The record is quite clear that the physician responsible at that point forward for the care of claimant's lower extremity vascular health was Dr. Potthoff. The efficacy of the treatment he recommended (the ongoing use of Coumadin and support hose) is borne out by the fact that at no point from the date of his May 9, 2003 report through the date claimant's Title II insured status expired (December 31, 2006) is there any evidence of recurrent DVT, no findings related thereto such as leg edema, erythema and only a few scattered references to right leg pain reflected in the medical evidence of record.

(AR 762-63)

### D. The ALJ could properly assign reduced weight to NP Walters' opinions

Plaintiff contends that the ALJ should have given at least "considerable weight" rather than "reduced weight" (AR 761) to NP Walters' opinions. Plaintiff's Brief at p. 3. The court disagrees. The ALJ could properly discount NP Walters' opinions because she is not an acceptable medical source under 20 C.F.R. § 404.1513. While NP Walters' opinions can be considered as evidence from an "other" medical source, they are not entitled the weight given to the opinion of an "acceptable medical source" such as a doctor. *See* 20 C.F.R. § 404.1513(d)(1) (evidence from "other" medical sources includes information from nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists and therapists). *See also, Shontos v. Barnhart*, 328 F.3d 418, 425-26 (8th Cir. 2003) (nurse practitioner is not an "acceptable medical source" under § 404.1513(a), but can be considered as an "other" medical source under 20 C.F.R. § 404.1513(d)(1)); *Nierzwick v. Commissioner of Social Security*, No. 00-1575, 2001 WL 303522 at * 4 (6th Cir. March 19, 2001) (physical therapist's report not afforded significant weight because the therapist is not recognized as an acceptable medical source).

In SSR 06-3p, the Commissioner acknowledged that with the growth of managed health care in recent years, nurse practitioners have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.[4] For this reason, opinions from other medical sources, such as nurse practitioners and physician's assistants "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." SSR 06-3p. Consistent with SSR 06-3p, the ALJ evaluated and then properly discounted NP Walters' opinions.

In contesting this decision, plaintiff contends that "[n]one of the reasons cited by the Commissioner for discounting Nurse Walters' opinions regarding the Claimant's need to elevate her lower extremities is valid." [5] First, plaintiff contends that the ALJ "implies that the Claimant has recovered from her deep vein thrombosis condition because she has not sought regular treatment from specialists." Plaintiff's Brief at p. 5. Plaintiff's first contention is without merit. The ALJ's decision points out that plaintiff had only one incident of DVT, that being in February 2003 (AR 762). The incident was resolved by April 18, 2003, when an ultrasound found no evidence of a clot, concluding that "DVT clinically reported has resolved" (AR 185). There is no evidence that plaintiff suffered from the condition after the February 2003 incident, which led the ALJ to determine that NP Walters' characterization of "chronic" right leg DVT was a misnomer (AR ).

---

[4] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

[5] Plaintiff cites no legal authority to support her three criticisms of the ALJ's decision. The legal authority cited by plaintiff at the end of her brief relates to the court's review of a treating physician's opinion. *See* Plaintiff's Brief at p. 7. As discussed in *Kalbach I* and in this opinion, *supra*, the treating physician standard is inapplicable to NP Walters.

Second, plaintiff contends that it was improper "to downgrade Nurse Walters' opinions based on the fact that Ms. Walters has been very critical of the Claimant's lifestyle regarding diet and exercise in her notes, yet is supportive of the Claimant's need for limitations." Plaintiff's Brief at pp. 5-6. Plaintiff's second contention is without merit. The ALJ could take plaintiff's non-compliance with NP Walters' recommendations into account. As a general rule, an impairment that can be remedied by treatment with reasonable effort and safety cannot support a finding of disability. *Johnson v. Secretary of Health and Human Services*, 794 F.2d 1106, 1111 (6th Cir. 1984); 20 C.F.R. § 404.1530(a) (in order to get benefits, the claimant must follow the treatment prescribed by the claimant's physician). *See, e.g., Raney v. Barnhart*, 396 F.3d 1007, 1011(8th Cir. 2005) (diabetic claimant's non-compliance with dietary regime and medication is inconsistent with an allegation of disability). Contrary to plaintiff's contention, while NP Walters' recognized that plaintiff was not following her recommended or prescribed treatment, the ALJ did not discount NP Walters' opinions for voicing a frank assessment of plaintiff (AR 761-63).

Third, plaintiff contends that the Commissioner improperly "questions Nurse Walters' opinions expressed in the Residual Functional Capacity when he compares that form to the paperwork completed regarding the Claimant's fitness to be a foster parent." Plaintiff's Brief at p. 6. Plaintiff's third contention is without merit. Plaintiff is referring to two reports issued by NP Walters, i.e., the November 9, 2004 report issued in support of plaintiff's DIB claim characterized her as disabled (AR 444-48), and the November 21, 2008 report issued in support of plaintiff's application to be an adoptive parent (Child and Family Services of Michigan, Medical Release & Adoptive Applicant's Physical Exam) minimized or failed to mention plaintiff's alleged disabling conditions (AR 896-97). For example, in her report to Child and Family Services, NP Walters

14

described plaintiff's "general and mental health" as follows, "Health problems, but no limitations in caring for children" explaining those problems as "Chronic DVT's & Diabetes." (AR 897).

The record does not include the specific medical requirements which plaintiff needed to meet to qualify as a foster parent. Nevertheless, the court agrees with the ALJ's determination that claimant's care for multiple foster children in addition to her own children on an everyday basis over a prolonged period, speaks to the claimant's overall ability to function in areas that have a common ground with those involved in the performance of basic work activities. Given this "common ground," NP Walters' determination that plaintiff had no limitations in caring for children is inconsistent with Walters' previous statement that plaintiff suffered from a myriad medical conditions which so limited her ability to perform work-related activities as to render her unable to perform even "low stress" jobs (AR 444-48). Nothing in the record indicates that plaintiff's condition improved between 2004 and 2008, nor does NP Walters explain how plaintiff's condition changed between those dates. On the contrary, plaintiff testified that she had consistent pain and swelling with her legs which has worsened over time (AR 903). An ALJ does not err in rejecting a physician's opinion, where that opinion changes without explanation. *See Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) (ALJ did not err in declining to refer to a physician's opinion, where the physician originally opined that the claimant could perform sedentary work and later reported that the claimant was disabled but "did not provide any objective medical evidence to support his change of heart"); *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir.1988) (holding that an ALJ's rejection of a treating physician's opinion that the claimant lacked the capacity to perform light or sedentary work was supported by substantial evidence where the opinion

15

was "inconsistent" with the treating physician's earlier evaluation and there were "no significant or specific changes" in the claimant's overall condition between the dates of the reports).

Furthermore, the court notes that the ALJ reviewed NP Walters' November 21, 2008 report in conjunction with an evaluation of plaintiff's credibility.  In this regard, the ALJ found that even in the absence of plaintiff's extensive childcare activity, the medical evidence would lead to the conclusion that plaintiff was not disabled through the date insured (AR 761).

### IV.  CONCLUSION

The ALJ's determination of plaintiff's residual functional capacity provides substantial evidence to support the ALJ's finding that plaintiff could perform her past relevant work as an accounting clerk.  Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g).  A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 24, 2012                         /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge

16